UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| CHARLES A. STEWART,<br><br>        Plaintiff,<br><br>vs.<br><br>DAVE LUNZMAN, Chief Deputy Sherriff, MARK MILBRANDT, Sheriff, JACLYN NAGEL, Sergeant for the Brown County Jail, AUSTIN BALL, C.O. for the Brown County Jail, SAMUEL HOPPOCK, C.O. for the Brown County Jail, JOANACONI MANACA, C.O. for the Brown County Jail, AUSTIN KURKOWSKI, C.O. for the Brown County Jail, and LINN KAMIN, Reporting Officer, in their individual and official capacities,<br><br>        Defendants. | 1:23-CV-01010-CBK<br><br><br>MEMORANDUM OPINION<br>AND ORDER |

Plaintiff sued defendants alleging that, while he was a state court pretrial detainee at the Brown County, jail in Aberdeen, South Dakota, defendants engaged in excessive force when they kicked, punched, and tased him for over a minute, resulting in a permanent scar. Defendants have filed a motion for summary judgment.

## DECISION

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Johnson v. Schulte Hosp. Group, Inc., 66 F.4th 1110, 1113–14 (8th Cir. 2023), quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011), Fed. R. Civ. P. 56(c)(2).

"The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law. "Grey v. City of Oak Grove, Mo., 396 F.3d 1031, 1034 (8th Cir. 2005).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Landon v. Northwest Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995).

The evidence must be considered in the light most favorable to the nonmoving party and all reasonable inferences must be resolved in that party's favor. Northern Bottling Co., Inc. v. Pepsico, Inc., 5 F.4th 917, 922 (8th Cir. 2021).

> The district court at summary judgment determines "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The "facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (internal quotation marks omitted), *quoting Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009). A genuine dispute over a fact exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson*, 643 F.3d at 1042, *quoting Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Arnett v. Norris, 160 F.4th 921, 925–26 (8th Cir. 2025).

## I. Qualified Immunity.

Defendants contend they are entitled to qualified immunity. "Qualified immunity 'shields government officials from liability when their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'" Hamilton v. Earl, 166 F.4th 1143, 1146 (8th Cir. 2026), *citing* Joseph v. Wheeler, 144

F.4th 1111, 1113 (8th Cir. 2025). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments" and "protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) (internal quotations omitted).

> To determine whether the defendants are entitled to qualified immunity, we ask whether they violated a constitutional right and whether that right was clearly established. *See Melton v. City of Forrest City*, 147 F.4th 896, 901–02 (8th Cir. 2025). If the answer to either question is no, the defendants are entitled to qualified immunity. *See McDaniel v. Neal*, 44 F.4th 1085, 1089 (8th Cir. 2022).

Hamilton v. Earl, 166 F.4th at 1146.

> To overcome qualified immunity, [plaintiff] "must show that the officers violated a constitutional right, and that the unlawfulness of their conduct was clearly established at the time." *Dundon v. Kirchmeier*, 85 F.4th 1250, 1255 (8th Cir. 2023). "For a right to be clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

Perkins v. City of Des Moines, No. 24-1375, 2026 WL 620409, at *3 (8th Cir. 2026)

"To demonstrate that a right was clearly established, plaintiff must point to 'controlling authority' or 'a robust consensus of cases of persuasive authority.'" Stewart v. Garcia, 139 F.4th 698, 705 (8th Cir. 2025), *citing* District of Columbia v. Wesby, 583 U.S. 48, 63, 138 S.Ct. 577, 199 L.Ed.2d 453 (2018) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741–42, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)).

> It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that "every reasonable official" would know.

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This requires a high "degree of specificity." We have repeatedly stressed that courts must not "define clearly established law at a

3

> high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.

D.C. v. Wesby, 583 U.S. at 63–64, 138 S. Ct. at 590 (citations omitted).

> To show a clearly established right, a plaintiff generally must identify a case where an official acting under similar circumstances was found to have violated the right in question. The plaintiff may point to existing circuit precedent that squarely governs the official's conduct, a robust consensus of persuasive authority on the issue, or a general constitutional rule that applies with obvious clarity to the facts at issue.

Webster v. Saint Louis County, 135 F.4th 614, 617 (8th Cir. 2025) (internal citations omitted).

"The Due Process Clause of the Fourteenth Amendment constrains the use of force against a pretrial detainee." Webster v. Saint Louis County, 135 F.4th 614, 616 (8th Cir. 2025), citing Kingsley v. Hendrickson, 576 U.S. 389, 397, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015).

> A violation [of the Fourteenth Amendment] occurs if an official purposely or knowingly uses force against a detainee and the use of force is objectively unreasonable. A use of force is reasonable if it is rationally related to a legitimate, nonpunitive governmental purpose and does not appear excessive in relation to that purpose. Objective reasonableness turns on the facts and circumstances of each particular case.

Webster v. Saint Louis County, 135 F.4th at 616–17 (internal citations omitted).

> As a threshold matter, however, a plaintiff must allege that the official used more than a *de minimis* amount of force or that the use of force was repugnant to the conscience of mankind. There is "a *de minimis* level of imposition with which the Constitution is not concerned," so "a *de minimis* quantum of force is not actionable under the Due Process Clause."

*Id.* Because the Fourteenth Amendment applies, plaintiff has "a lighter burden to show a constitutional violation." Peterson v. Heinen, 89 F.4th 628, 634 (8th Cir. 2023), *citing* Smith v. Copeland, 87 F.3d 265, 268 n.4 (8th Cir. 1996) (*citing* Bell v. Wolfish, 441 U.S. 520, 535 n.16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).

4

Under the District of South Dakota's Civil Local Rules of Practice, "[a]ll material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts." D.S.D. L.R. 56.1(D). Plaintiff did not specifically object to the defendants' separately numbered statement of material facts. This Court is entitled to rely upon the facts set forth by the defendants. "A party opposing a motion for summary judgment must identify any material facts on which there exists a genuine material issue to be tried." D.S.D. Civ. LR 56.1(B). Plaintiff filed a separately numbered statement of disputed facts but the document was a restatement of the defendant's claimed facts. Plaintiff did submit an affidavit setting forth his claimed facts. Plaintiff is not excused from following L.R. 56.1(D) even though he is proceeding *pro se* without the assistance of counsel. However, the Court will review the affidavit submitted by the plaintiff to determine whether material facts are in dispute.

The United States Court of Appeals for the Eighth Circuit has set forth the elements of a claim of excessive use of force for pretrial detainees, in relevant part:

> *First*, the defendant [here describe an act such as "struck, hit, kicked, or shot"] the plaintiff; and
>
> *Second*, the force used was excessive because it was not reasonably necessary to [here describe the purpose for which force was used such as "restore order," or "maintain discipline,"]; and
>
> *Third, as a direct result, the plaintiff was injured; and*
> [Fourth, the defendant was acting under color of law.]
>
> If any of the above elements has not been proved, then your verdict must be for the defendant.
>
> In determining whether the force [if any] was excessive, you must consider: the need for the application of force; the relationship between the need and the amount of force that was used; the extent of the injury inflicted; whether it was used for punishment rather than for a legitimate purpose such as maintaining order or security within [here describe the facility in which the plaintiff was incarcerated]; and whether a reasonable officer on the scene would have used the same force under similar circumstances.

5

[You should keep in mind that the decision about how much force to use often must be made in circumstances that are tense, uncertain and rapidly changing.]

Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit, Instruction No. 4.41. In determining whether defendants are entitled to summary judgment, this Court must determine whether force was used and, if so, whether the force used was reasonably necessary for the purpose for which it was used. If the force was excessive, this Court is required to determine whether or not a reasonably objective jailer would have believed he or she was violating the Constitution – in other words, whether or not plaintiff's right to be free from the force used under the circumstances was clearly established.

The undisputed facts show that, at approximately 5:19 p.m. on August 31, 2021, defendant Nagel was in the control room when she noticed the camera in plaintiff's cell was partially covered. She reported to the area where plaintiff's cell was located and radioed for backup staff. When staff arrived, they found plaintiff and another inmate in plaintiff's cell. Staff suspected the inmates had been fighting but plaintiff denied they were fighting. Plaintiff admits that he yelled "get the fuck away from us." Defendant Nagel decided to move one of the men to another area of the jail. Plaintiff indicated he was not moving. Defendant Nagel returned to the control room to review the camera footage. She determined that the two men had been arguing, that plaintiff went into his cell, that the other inmate approached the cell door, that Stewart partially covered the camera with a piece of paper, and that nonetheless it appeared that the two men were fighting.

Defendant Nagel decided to move plaintiff to another cell area. Plaintiff indicated he was not moving cells. Plaintiff admits that he stated "I am comfortable right where I am at and I am not going anywhere unless they carry me out." Despite numerous commands to exit the cell, plaintiff did not do so. Plaintiff admits that he refused to leave the cell and instead ran to the back of the cell and sat "balled up on the floor between the toilet and the end of the bunk" with his "knees drawn up with my elbows on my knees

6

chin to chest and hands covering my face and head." Plaintiff admits that he heard defendants say "stop resisting."

Defendants Ball and Manaca attempted to secure plaintiff's legs and pull plaintiff out of the corner. Plaintiff claims he felt himself being kicked and he grabbed a leg of one of the defendants. Plaintiff claims that he then was punched and kicked again. Plaintiff continued actively resisting by grabbing the legs of defendants Ball and Manaca with both his arms and legs and "held on to the legs for dear life." At some point defendants Hoppock and Kurkowski attempted to assist in the removal of plaintiff from the cell. The three correctional officers were unable to fully secure plaintiff. When they attempted to turn plaintiff over to handcuff plaintiff, plaintiff resisted,

Plaintiff heard someone say to tase him. Plaintiff claims he asked defendants not to tase him. Defendant Nagel unholstered her taser, took out her cartridge, and commanded plaintiff to stop resisting and put his hands behind his back. Plaintiff did not comply. Defendant Nagel placed the taser on plaintiff's forearm and warned plaintiff she would use it if he did not cooperate. Plaintiff did not comply and continued to resist. Plaintiff does not contend that at any time he was compliant with defendants' repeated requests to stop resisting. Defendant Nagel performed a "drive stun" on plaintiff's forearm. Plaintiff stopped physically resisting but continued to yell.

Following the incident, a deputy sheriff took plaintiff to the hospital and, after medical clearance, plaintiff was returned to the jail. Plaintiff's medical records from that visit show that plaintiff had "multiple somatic complaints" but was able to ambulate under his own power. Plaintiff denied numbness or tingling of his extremities. As to his musculoskeletal condition, it was noted that plaintiff was able to bear weight and there was "no evidence of injury."

Plaintiff claims that he was kicked and punched. No court would condone alleged gratuitous punishment. However, the "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989).

7

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

Graham v. Connor, 490 U.S. at 396–97, 109 S. Ct. at 1872 (internal citation omitted) (a case involving alleged Fourth Amendment violation during an arrest). Under the circumstances presented by plaintiff's admission that he was actively resisting directives from correctional officers, his claims that he was punched and kicked do not rise to a Constitutional violation.

Plaintiff's version of the event differs from the defendants as it relates to defendants assaulting plaintiff. "Though we view the facts in the light most favorable to the nonmoving party, [plaintiff has] not submitted competent, admissible evidence that rebuts the [defendants'] version of events." Zubrod v. Hoch, 907 F.3d 568, 577 (8th Cir. 2018). Plaintiff "may not stave off summary judgment armed with only the hope that the jury might disbelieve" the defendants' statements which "were substantially the same regarding the material facts." Id.

There is no genuine issue of material fact that force was used against plaintiff. He was tased. However, plaintiff cannot show that his tasing constituted excessive force in violation of a clearly established constitutional right. The United States Court of Appeals for the Eighth Circuit has held that defendants' actions in using the weight of their bodies to restrain a detainee for approximately three minutes while he was actively resisting and use of a taser set to drive stun mode during the period in which a detainee was fighting the defendants' efforts to subdue him did not amount to excessive use of force. Ryan v. Armstrong, 850 F.3d 419, 428 (8th Cir. 2017). Use of pepper spray and a taser during extraction from an inmate's cell and takedown during escort to another cell was held not to constitute excessive force in Hooper v. Barden, No. 24-1783, 2025 WL 603425, at *1 (8th Cir. 2025). Plaintiff has failed to "identify controlling authority or a robust consensus of cases of persuasive authority" that would support his argument that his

8

tasing violated a clearly established constitutional right to be free from excessive force. Stewart v. Garcia, *supra*.

The circumstances of this case warrant qualified immunity. Plaintiff refused several requests to leave his cell. He was quite adamant that he would not comply. He was actively resisting correctional officers' attempts to remove him. His resistance became active when he started wrapping his arms and legs around an officer's legs. Plaintiff was warned prior to being tased and he still refused to comply. He was tased once and the taser was set to stun rather than incapacitate mode. Tasing was objectively reasonable under the circumstances present in this case.

Plaintiff cannot show that he was subject to excessive force. Further, plaintiff cannot show that it is clearly established that use of a taser under the circumstances in this case violates the plaintiff's constitutional rights. Defendants Nagel, Ball, Manaca, Hoppock, and KurKurkowski are entitled to qualified immunity.

## II. Official Capacity.

The Court conducted an initial review of the original complaint pursuant to 28 U.S.C. § 1915A(b). Upon initial review, plaintiff's official capacity claims were dismissed, along with all claims other than the excessive force claim against defendant Lunzman. Following discovery, plaintiff learned the identity of the unknown defendants and he was allowed to add parties and amend his complaint. In his amended complaint, plaintiff once again sued all defendants in both their individual and official capacities. I will address the official capacity claims as set forth in my previous order.

When a public employee is sued in his or her official capacity, the plaintiff is suing "only the public employer," in this case, Brown County. Furlow v. Belmar, 52 F.4th 393, 406 (8th Cir. 2022). An official capacity claim against a County government "is only nominally against the official and in fact is against the official's office and thus the sovereign itself." Lewis v. Clarke,. 197 L. Ed. 2d 631, 137 S. Ct. 1285, 1291 (2017). Local governments, like counties, are liable only for "their own illegal acts" and are not vicariously liable under § 1983. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't. of Soc. Servs. of

9

City of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978). *Accord*, Connick v. Thompson, 563 U.S. 51, 60, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011). "A county may be liable for a constitutional violation under § 1983 only if the violation resulted from a policy or custom of the municipality." Calgaro v. St. Louis County, 919 F.3d 1054, 1058 (8th Cir. 2019), *citing* Monell V. Dep't of Soc. Servs, supra. Plaintiff does not allege any claim against Brown County. His official capacity claims should be dismissed for failure to state a claim upon which relief can be granted.

**III. Failure to Train.**

Defendants address the possibility that plaintiff's official capacity claims may be an attempt to plead a failure to train claim. Plaintiff has not alleged a failure to train claim.

**IV. Vicarious Liability.**

Defendants address the possibility that plaintiff attempted to raise vicarious liability claims. Plaintiff did allege in his complaint that defendants Lunzman and Milbrandt were the Sheriffs of Brown County either at the time of the event or during grievance proceedings. Plaintiff has not alleged that either defendant Lunzman or Milbrandt were present at the time of the event or participated in any way in the alleged use of force.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (citation omitted). "[A] supervising officer can be liable for an inferior office's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Id.* (internal quotation omitted). Defendants Lunzman and Milbrandt are entitled to summary judgment on any vicarious liability claim.

**V. Grievance Proceedings.**

Plaintiff vaguely references several defendants' involvement in responding to his grievance complaints concerning the event at issue in this case. Allegations that any

10

defendant did not "adequately consider his grievances did not state a claim. <u>King v. Houston</u>, 556 F. App'x 561, 563 (8th Cir. 2014) *See Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993)." "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." <u>Buckley v. Barlow</u>, 997 F.2d 494, 495 (8th Cir. 1993).

Defendants are entitled to summary judgment on any purported claim that a defendant failed to timely or adequately process any of plaintiff's grievances.

## ORDER

Based upon the foregoing,

IT IS ORDERED:

1. Defendants' motion, Doc. 85, for summary judgment is granted.

2. Plaintiff's motion, Doc. 105, to deny defendants' motion for summary judgment is denied.

3. Plaintiff's complaint is dismissed with prejudice and without costs.

DATED this ___19th___ day of March, 2026.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

11